O’NIELL, Chief Justice.
 

 A bill of information was filed in the Ninth district court, in the parish of Rap-ides, charging that Vincent Chicóla and Tony Damico, Jr., on the 26th day of August,, 1937, willfully, maliciously and felo-niously, did break and enter the warehouse of the Stewart Service Station, in the night time, with intent to steal. On the same day on which the bill of information was filed.
 
 *697
 
 Chicóla and Damico were brought into court and were arraigned and pleaded guilty; and on motion of the district attorney, the defendants were sentenced, immediately, to be confined in the state penitentiary, at Baton Rouge, for the term of one year. On the next day after Chicóla and Damico were sentenced, they were taken to Baton Rouge by the sheriff and were delivered to the penitentiary authorities, whence they were sent to the penal farm at Angola, in the neighboring parish of West Feliciana. Two weeks afterwards Chicóla and Damico, having employed counsel, brought suit in the Nineteenth district court, in the parish of East Baton Rouge, for a writ of habeas corpus, against the General Manager of the Louisiana State Penitentiary. The prisoners alleged in their petition that they were imprisoned for a crime which they had not committed; that is to say, that they were charged with burglary of a warehouse of the Stewart Service Station, when in fact there was no such warehpuse in existence. They annexed to their petition photographs of the Stewart Service Station, to show that there was no warehouse connected with the service station; and they described the three rooms which the service station was composed of — the third of which rooms, they alleged, was used for the storing of new tires and repaired tires, and for the repairing of tires and tubes. They alleged that the Stewart Service Station did' not operate a warehouse where the alleged crime was committed, or elsewhere. They averred, in the alternative, and in the event only that the bill of information and the pleas of guilty should be held valid, that the sentence imposed upon each of them should be decreed null, because less than twenty-four hours lapsed from the time of the plea of guilty to the time of the pronouncing of the sentence. They prayed for a writ of habeas corpus, to be directed to the General Manager of the Louisiana State Penitentiary, commanding him to bring them into court and to show cause why the'y should not be released from custody. They prayed also that the sentence imposed upon each of them should be annulled and that they should be released from custody. The writ of habeas corpus and the rule to show cause were granted, as prayed for.
 

 In response to the writ and the rule to show cause, the general manager of the penitentiary brought the prisoners into court, and at the same time filed, first, an exception to the jurisdiction of the court; second, an exception of no cause or right of action; and, third, an answer to the writ and the rule to show cause. In his answer the general manager denied that he had the prisoners actually in his custody when the suit was filed, but admitted that they were imprisoned in the state penitentiary at Angola, in the parish of West Feliciana; and he averred that the authority under which the prisoners were imprisoned was the sentence imposed upon them by the Ninth district court, in and for the parish of Rapides —a certified copy of which sentence the respondent annexed to his answer.
 

 There was annexed to the petition of Chicóla and Damico, for the writ of habeas corpus, an admission signed by the district attorney for the Ninth judicial district, to the effect that he had examined the petition, and that, with particular reference to the
 
 *699
 
 paragraph describing the' Stewart Service Station, he found that the facts therein stated were true and correct. But, when the general manager of the penitentiary filed his pleas and his answer to the writ of habeas corpus, the district attorney for the Ninth judicial district filed a motion asking to qualify the admission which he had made, to the effect that the Stewart Service Station did not operate a warehouse where the alleged crime was committed. The district attorney then qualified his admission by saying that all that he had admitted or intended to admit was that the Stewart Service Station did not operate a “warehouse,” in the common acceptation of the term, either at the place where the alleged crime was committed, or elsewhere; but that he did not admit of acknowledge the truth of the allegation — which he considered a mere conclusion on the part of the pleader' — that the facts did not warrant the characterizing of the room which was burglarized as a “warehouse,” in the meaning of the statute on which the bill of information was founded. We have given only the substance, not the words, of the district attorney’s admission, as qualified, and as we understand it.
 

 The district judge overruled the exception to ¿he jurisdiction of the court, referred the exception of no cause or right of action to the merits of the case, and, after trial of the case on its merits, gave judgment for Chicóla and Damico, ordering them delivered over to the sheriff of the "parish of ■Rapides, to be taken before the Ninth district court, for the parish of Rapides, to have a valid sentence imposed upon them. .The reasons which the judge gave for his decree show that he considered the bill of information and the plea of guilty null for. the reason that there was no warehouse belonging to or operated by the Stewart Service Station; but, in his decree, the judge declared only the sentence null.
 

 The Attorney General and the attorneys for the general manager of the penitentiary have brought the case here on a writ of certiorari and alternative writs of prohibition and mandamus.
 

 We affirm the ruling that the Nineteenth district court, in and for the parish of East Baton Rouge, had jurisdiction to grant the writ of habeas corpus. The Constitution 1921, in article 7, § 2, provides that “each district judge throughout the State * * * may issue writs of habeas corpus, in behalf of any person in actual custody in cases within their respective jurisdictions.” And the Code of Criminal Procedure, in article 114, provides: “The writ of habeas may be issued: * * * by the district judges, at the instance of any person in actual custody in their respective districts.” It is not contended by the Attorney General, or by counsel for the general manager of the penitentiary, that this proceeding for a writ of habeas corpus should have been instituted in the Ninth district court, for the parish of Rapides, where Chicóla and Damico were sentenced. The argument is that the proceeding should have been instituted in the parish of West Feliciana, where Angola penal farm or penitentiary is located, and which is in the Twentieth judicial district. It is true that Chicóla and Damico were at Angola, in the parish of West Feliciana, at the time when the habeas corpus proceeding was filed in the district
 
 *701
 
 court in the parish of East Baton Rouge; but they were under the control of the general manager of the penitentiary, whose office is in Baton Rouge. In Act No. 70 of 1900, in section 1, it is declared that all persons sentenced to the penitentiary shall be confined in the state penitentiary at Baton Rouge, on state farms, on quarter boats or in other suitable quarters. In section 2 of the act, as amended by Act No. 137 of 1916 and by Act No. 93 of 1920, it is declared that the control and management of the penitentiary
 
 and of the convicts
 
 shall be under a general manager, styled General Manager of the Louisiana State Penitentiary. According to section 3 of the Act of 1900, as amended, the general manager of the penitentiary has authority to appoint a warden, who shall have immediate supervision over the penitentiary and the convict farms, quarter boats, and' other places where convicts are kept. Hence, if a suit for a habeas corpus, on behalf of a convict, sentenced to imprisonment in the penitentiary at Baton Rouge, had to be instituted in the parish where the convict happened to be at the time of the institution of the suit, instead of being instituted at the official domicile of the general manager of the penitentiary, it would be necessary to bring the suit against the warden or deputy warden having immediate charge of the convict. Such proceedings would cause inconvenience to the general manager of the penitentiary, and in some instances might cause much doubt or confusion as to where the suit should be brought. We are convinced, therefore, that the lawmaker intended that the place of original jurisdiction of such suits should be the city of Baton Rouge, where the general manager of the penitentiary has his official domicile. In State ex rel. Cutrer v. Pitcher, General Manager of the Louisiana State Penitentiary, 164 La. 1051, 115 So. 187, this court reviewed, by writs of certiorari and mandamus, a judgment of the Nineteenth district court, for the parish’ of East Baton Rouge, in a habeas corpus suit to release a convict from the penitentiary; and no one questioned the jurisdiction of the district court, or the authority of this court to review the judgment of the district court. Aside from these reasons why the district court in Baton Rouge should have jurisdiction over cases like this, it would seem unreasonable to say, in this case, that the prisoners were not in the parish of East Baton Rouge, when in fact they were actually brought into court by the respondent at the time when he excepted to the jurisdiction of the court.
 

 The attorneys for Chicola and Damico contend that this court has not supervisory jurisdiction' in this case, except to pass upon the legality or regularity of the proceedings; and hence that the court has no authority to review the judgment of the district court on the exception of no cause or right of action, or on the merits of the case. The case which we have just cited, State ex rel. Cutrer v. Pitcher, General Manager of the Louisiana State Penitentiary, is authority for this court to exercise its supervisory jurisdiction over a case like this, on its merits. Counsel for Chicola and Damico cite decisions to the effect that the writ of certiorari is a means by which this court may pass only upon the validity or
 
 *703
 
 regularity of the proceedings in another court, but not upon a case on its merits. The decisions cited have reference to the writ of certiorari defined in article 855 of the Code of Practice. The decisions were rendered before this broad delegation of power was written in the Constitution, viz.: “The Supreme Court shall have control of and general supervision over all inferior courts.” That was written first in the Constitution of 1879, in article 90, and was retained in the Constitution of 1898 and in the Constitution of 1913, in article 94, and is retained in the Constitution of 1921, in section 10 of article 7. Hence there is no doubt now about the supervisory jurisdiction of the Supreme Court over the decisions of the other courts of this state, with regard to the merits of the case, as well as the legality or regularity of the proceedings, where there, is no right of appeal. In this case it is conceded that no court has appellate jurisdiction.
 

 As there is no dispute about the facts of the case, it may be decided as well upon its merits as upon the exception of no cause or right of action. The prosecution of Chicola and Damico was founded upon section 852 of the Revised Statutes, as amended by Act No. 15 of 1912 and by Act No. 72 of 1926, viz.:
 

 “Whoever, with intent to * * * steal, * * * shall in the night time, break and enter into any * * * warehouse, * * * or any building, * * * occupied or used for any purpose whatsoever (other than as a dwelling), * * * on conviction, shall suffer imprisonment at hard labor not exceeding ten years.”
 

 We assume from the pleadings in this case that the so-called “warehouse” which Chicola and Damico were accused' of breaking and entering was the room which is described in their petition as having been used for the storing of automobile tires, in the Stewart Service Station. Inasmuch as Chicola and Damico were willing to plead guilty to the charge of breaking and entering the so-called “warehouse” of the Stewart Service Station, it was a matter of no importance to them whether the part of the building, which they broke and entered, was properly called a warehouse or should have been called the storeroom of the Stewart Service Station. The crime would have been the same, and' the penalty the same, under any name that might have been given to the building or the room that was broken and entered — so long as it was not occupied or used as a dwelling. We have no doubt that the defendants would have been sustained in their objection if they had pleaded not guilty to the charge of breaking and entering a “warehouse,” and had objected to the introduction of evidence of their having broken and entered the storeroom, or any other room, in the Stewart Service Station. In State v. Gibson, 157 La. 166, 102 So. 192, the defendant was charged with breaking arid entering a warehouse, and pleaded not guilty, and, on the trial of the case, he objected to the offering of proof that he had broken and entered a junk room in a theater. The' district judge overruled the objection, but on appeal we reversed the ruling and granted a
 
 *705
 
 new trial. In the present case the district judge cites State v. Gibson as authority for his holding that the bill of information and the plea of guilty were not valid, because the building or room which was referred to in the bill of information as a “warehouse,” and which the defendants were accused of breaking and entering, was not in fact a warehouse. The difference between this case and the Gibson Case is that, in this case, the defendants, by their, plea of guilty, tacitly waived whatever objection they might have had with regard to the description of the building or room which they were accused of breaking and entering. A decision which is more appropriate to this case was rendered in State v. Blake, 172 La. 258, 134 So. 84, 85. In that case the defendant was convicted on the charge of breaking and entering, in the night time, etc., “a certain building located on Texas Avenue and Fetzer Avenue, in the city of Shreveport, Louisiana, the property of the Cash & Carry Cleaners.” After being convicted the defendant filed a motion in arrest of judgment, contending that the bill of information did not set forth any crime, because of the omission to state the kind of building that was said to have been broken and entered, or the purpose for which it was occupied or used. The motion in arrest of judgment was overruled, and the ruling was affirmed, on the ground that, according to the statute, Rev.St. § 852, as amended by Act No. 15 of 1912 and Act No. 72 of 1926, the omitting from the indictment or bill of information of a statement of the purpose for which the building was occupied or used was a matter of no importance unless the defendant made objection before going to trial or when the testimony was offered during the trial. It is argued for Chicola and Damico that the decision in the Blake Case is not appropriate to this case, because in the Blake Case the description of the building, in the bill of information, was merely incomplete, but not wrong, as in this case. Assuming — as we do assume from the pleadings in this case — that the so-called “warehouse of the Stewart Service Station” (as the building was described-in the bill of information) had reference to the storeroom in the service station, the error - of calling the premises “the warehouse of the Stewart Service Station” was not so serious that the parties accused could not waive their right to take advantage of the error. Our conclusion, therefore, is that the defendants’ plea of guilty of the crime charged in the bill of information was a valid plea of guilt of the crime of burglary, as denounced by section 852 of the Revised Statutes, as amended by Act No. 15 of 1912 and Act No. 72 of 1926.
 

 The alternative argument on behalf of Chicola and Damico is that the sentence imposed upon them is illegal because less than twenty-four hours elapsed between the plea of guilty and the pronouncing of the sentence. The argument is founded upon article 521 of the Code of Criminal Procedure, which provides:
 

 “In all criminal cases at least twenty-four hours shall elapse between conviction and sentence, unless the accused waive the delay and ask for the imposition of sentence at once- provided that it shall be within the discretion of the trial court, and not subject
 
 *707
 
 to the review of any other court or judge, tó grant or to refuse to grant a longer delay than twenty-four hours between conviction and sentence.”
 

 The word “conviction,” ordinarily, means a conviction by means of a plea of guilty, as well as a conviction in consequence of a trial by a judge or jury; but, as used in article 521 of the Code of Criminal Procedure, the word “conviction” means conviction in consequence of a trial by a judge or jury. When an accused person pleads guilty it is not necessary that he should formally waive the delay of twenty-four hours, and ask for the imposition of sentence at once, in order to allow the judge to pronounce the sentence before the expiration of the twenty-four hours. It suffices if the prisoner does not ask for a delay when the judge asks him if he has any reason to urge why the sentence should not be pronounced. The minutes of the court, in this case, show that the judge asked the prisoners that question before he pronounced the sentence upon them. There is therefore no merit in their alternative plea that the sentence was imposed prematurely.
 

 The judgment of the district court, ordering the General Manager of the Louisiana State Penitentiary to deliver the prisoners, Vincent Chicóla and Tony Damico, Jr., to the sheriff of the parish of Rapides, La., to be taken before the Ninth district court and there to be sentenced again, is annulled, and the demand of the prisoners to be released on the writ of habeas corpus is rejected, and their suit is ordered dismissed.
 

 HIGGINS, J., absent